[No. B008808. Second Dist., Div. Three. Sept. 9, 1985.]

ROGER CREIGHTON et al., Plaintiffs and Appellants, v.
KATHLEEN REVICZKY, as City Clerk, etc.,
Defendant and Respondent.

■■■■■■■■

COUNSEL

Kathryn Dunaway for Plaintiffs and Appellants.

Weiser, Kane, Ballmer & Berkman, R. Bruce Tepper, Jr., and Louie L. Vega for Defendant and Respondent.

OPINION

DANIELSON, J.—Appellants Roger Creighton and others appeal from the judgment denying their petition for writ of mandate (Code Civ. Proc., § 1085) by which they sought to compel respondent Kathleen Reviczky, City Clerk of the City of Hermosa Beach, to file and process a referendum petition. We affirm the judgment.

FACTS

On June 26, 1984, the Hermosa Beach City Council adopted ordinance number 84-751, entitled: "AN ORDINANCE OF THE CITY OF HERMOSA BEACH WHICH ADOPTS A SPECIFIC PLAN TO REGULATE DEVELOPMENT IN THE DOWNTOWN AREA BETWEEN 15th AND 13th STREETS AND THE STRAND AND HERMOSA AVENUE AS INDICATED ON EXHIBIT 1 MAP AND LEGALLY DESCRIBED IN EXHIBIT 2." The body of the ordinance set forth a plan for construction of a hotel/convention center complex in the affected area, including development standards, conditions of project approval, and provisions concerning alteration of public streets and amendment of the local coastal plan, as well as enactment of a development agreement and appropriate conditional use permit.

On July 24, 1984, appellants presented their petition, requesting the city council to repeal or submit to the voters ordinance number 84-751, to the respondent city clerk for filing.

Across the top of each section of the referendum petition was printed the following:

*"To The City Council of Hermosa Beach, California*

"We, the undersigned, being duly qualified and registered voters of the City of Hermosa Beach, California, and constituting not less than 10% of those who are voters of said City, hereby protest against passage of: City of Hermosa Beach Ordinance Number 84751: AN ORDINANCE OF THE CITY OF HERMOSA BEACH WHICH ADOPTS A SPECIFIC PLAN TO REGULATE DEVELOPMENT IN THE DOWNTOWN AREA BETWEEN 15TH AND 13TH STREETS AND THE STRAND AND HERMOSA AVENUE AS INDICATED ON EXHIBIT 1 MAP AND LEGALLY DESCRIBED IN EXHIBIT 2.

"We request that the City Council reconsider the legislative act and repeal the same or submit the same to the voters at an election called for this as prescribed by law. . . ."

Pursuant to advice from the Hermosa Beach City Attorney, respondent refused to accept the petition for filing on the ground that it did not comport with the requirements of Elections Code section 4052. The time for filing the petition expired on July 27, 1984.

On August 15, 1984, appellants filed a petition in the Los Angeles County Superior Court seeking a writ of mandate to command respondent city clerk to accept their petition for filing and to process it according to law. Respondent filed opposition to the petition.

In declarations supporting the petition for writ of mandate, persons who collected signatures on the referendum petition stated that they exhibited copies of the ordinance and/or explained its provisions to prospective signatories. In opposition, respondent city clerk declared that although she did, at the instance of Paul Robinson (who is one of the persons who circulated the petition), look over the printed referendum petition on June 19, 1984, prior to passage of the ordinance, and give him her handwritten letter stating her belief that the petition comported with the Elections Code requirements, she also orally informed Robinson that her opinion was not worth much because she was not a lawyer. Respondent stated that she gave Robinson copies of the pertinent portions of the Elections Code, including section 4052. In addition, respondent declared that she received a letter from a person who had signed the petition, asking that her name be removed therefrom and claiming she had been misinformed as to its import.

According to respondent's declaration, the defect in the petition was called to her attention by the city attorney on July 13, 1984, whereupon she immediately addressed a letter to its circulators advising them "that a ref-

erendum petition must contain the entire text of the ordinance, or portion thereof, that is the subject of the petition."

The matter was heard on September 11, 1984, and on September 18, 1984, the superior court made its order denying the petition. Appellants filed a timely notice of appeal.

## CONTENTIONS

Appellants contend that the purpose of the requirements set forth in Elections Code section 4052 was not frustrated by the defects in their petition, which was therefore valid.

Respondent contends the petition failed to meet the statutory requisites for such a petition, and was therefore fatally defective. Respondent also contends that the substantial compliance with the statute claimed by appellants is not sufficient to lend validity to the petition.

## DISCUSSION

The core issue presented by this appeal is whether each section of a municipal referendum petition must contain the entire text of the ordinance, or the portion of the ordinance, which is the subject of the referendum. We hold that it must.

That issue is governed by section 4052 of the Elections Code,[1] which was substantially rewritten in 1982 to provide, in pertinent part as follows:

"Across the top of each page of the referendum petition there shall be printed the following:

" 'Referendum Against an Ordinance Passed by the City Council'

"Each section of the referendum petition shall contain the identifying number or title and text of the ordinance or the portion of the ordinance which is the subject of the referendum."

In designing their referendum petition appellants apparently read the third paragraph of section 4052 as meaning that each section of the petition must contain *either* the identifying number of the ordinance which is the subject of the referendum *or,* in the alternative, it must contain the title and text of that ordinance. That misinterpretation of the statute was obviously shared

---

[1] All statutory references are to the Elections Code unless otherwise indicated.

by the city clerk. When appellants' representative, Mr. Robinson presented the petition to the city clerk ". . . for review and technical correctness . . ." the clerk gave him a letter, addressed "To Whom It May Concern," stating that "It is of my opinion going over it with him [Robinson] that it appears to comply with the requirements of the Calif. Elections Code." As set forth above, the clerk also told Mr. Robinson at that time, that her opinion was not worth much because she was not a lawyer, and that she then gave Robinson copies of pertinent sections of the Elections Code. These efforts of the city clerk and the appellants to comport with the requirements of the law were without fault.

A careful analysis of section 4052, however, demonstrates that appellants' interpretation is incorrect. When that section is examined in the light of its legislative history, its place in the relevant statutory scheme, its role in implementing important public policy, and judicial decisions interpreting related statutes, it is clear that it requires municipal referendum petitions to contain the entire text of the ordinance or portion thereof which is the subject of the referendum.

The legislative history of section 4052, though meager, makes it clear that one of its purposes is to reduce confusion as to the contents of referendum petitions. The 1982 amendments to section 4052 ". . . are directed toward providing uniformity in the form of municipal referendum petitions and reducing confusion as to the contents of these petitions." (See: Assembly Office of Research analysis for Assembly Third Reading file, Apr. 29, 1982.)

Section 4052 is a part of division 5 of the Elections Code, governing measures submitted to the voters. Division 5 includes, inter alia, chapters prescribing procedures for the exercise of the initiative and referendum powers in state, county, municipal and district elections. (Cal. Const., art. II, § 11.) Chapter 3 of division 5, commencing with section 4000, relates to municipal elections. It includes section 4052.

Section 3515, relating to state elections, provides: "Any initiative or referendum petition may be presented in sections, but each section shall contain a full and correct copy of the title and text of the proposed measure."

Section 3701, relating to county initiative elections, requires by implication that the text of a proposed county ordinance be contained in an initiative petition. That section provides, in part: "Any proposed ordinance may be submitted to the board of supervisors by filing an initiative petition . . . signed by not less than the number of voters specified in this article." And section 3755, relating to county referendum elections provides, in part:

"The provisions of this code relating to the form of petitions, . . . when an ordinance is proposed by initiative petition, govern the procedure on ordinances against which a protest is filed."

Section 4001, relating to municipal initiatives, provides in part: "Any proposed ordinance may be submitted to the legislative body of the city by a petition . . . . The petition may be in separate sections, . . . The first page of each section shall contain the title of the petition and the text of the measure."

Thus, we note that state and county initiative or referendum petitions must contain the text of the proposed or protested measure, and that municipal initiative petitions must also contain the text of the proposed measure. It is only section 4052, relating to municipal referendum petitions, which we must construe.

██ "In construing a statute, courts should ascertain the intent of the Legislature so as to effectuate the purpose of the law. . . . 'Words must be construed in context, and statutes must be harmonized, both internally and with each other, to the extent possible.' [Citation.]" (*People* v. *Mobil Oil Corp.* (1983) 143 Cal.App.3d 261, 270 [192 Cal.Rptr. 155].) "Statutory construction which leads to absurd consequences should be avoided." (*Geftakys* v. *State Personnel Board* (1982) 138 Cal.App.3d 844, 860 [188 Cal.Rptr. 305].)

██ In the case before us we have seen that the legislative purpose in enacting the 1982 amendments to section 4052 was to reduce confusion as to the contents of referendum petitions. It is clear that the hazard of confusion which the Legislature sought to reduce is the confusion in the minds of the electors as to the true import of the referendum petitions they are asked to sign. The designation of the protested legislation by number only, as appellants have construed the section, would create and compound confusion as to the measure. The requirement that the petition must contain the text of the protested legislation, as respondent contends, would reduce confusion to a practical minimum. This would also construe the words of the statute in context, and would harmonize section 4052 with the other statutes which make up the scheme which the Legislature has prescribed for the exercise of the initiative and referendum powers.

This also avoids the absurd consequence of positing the identifying number of an ordinance, standing alone, against the combined title and text of that ordinance, as equivalent options and methods for reducing confusion in the minds of the electors.

Our Supreme Court, in *Clark* v. *Jordan* (1936) 7 Cal.2d 248 [60 P.2d 457, 106 A.L.R. 549], has termed the initiative and referendum power, reserved by our electors in our constitution, as a "most important privilege." ■ The court there stated: "While we are of the opinion that statutes dealing with the initiative should be liberally construed to permit the exercise by the electors of this most important privilege, we are also of the opinion that statutes passed for the purpose of protecting electors from confusing or misleading situations should be enforced." (*Id.*, at p. 252.) The court also found that a "short title" printed across the top of each page after the first page of an initiative petition failed to substantially comply with the requirements of a statute providing for such a " 'short title, in not to exceed twenty words, showing the nature of the petition, and the subject to which it relates.' " (P. 249.) The court noted that the purpose of the statute was " 'to give to the elector additional information other than that afforded by the Constitution as to the nature of the petition which he is asked to sign. No elector can intelligently exercise his rights under the initiative law without a knowledge of the petition which he is asked to sign, and any legislation which will increase the facilities of the elector to acquire such information is well within the terms of the Constitution permitting the enactment of legislation to facilitate the operation of this provision of the Constitution.' (*Boyd* v. *Jordan* 1 Cal.(2d) 468 . . . .)" (*Clark* v. *Jordan, supra,* 7 Cal.2d at pp. 249-250.)

In *Myers* v. *Stringham* (1925) 195 Cal. 672 [235 P. 448], the city charter of the City of Berkeley provided: " 'No ordinance shall be revised, re-enacted or amended by reference to its title only; but the ordinance to be revised or re-enacted, or the section or sections thereof to be amended, or the new section or sections to be added thereto, shall be set forth and adopted in the method provided in this section for the adoption of ordinances.' (Stats. 1909, p. 1229.)" (*Id.*, at p. 675.) The Berkeley city clerk refused to examine an initiative petition on the ground that the proposed ordinance attempted to amend an existing ordinance without setting forth the affected section in full as required by the charter. The court denied the proponents of the initiative a writ of mandate to compel the city council and city clerk to examine and certify the initiative petition, on the ground that it failed to comply with the charter provision, the clear purpose of which was "to compel an ordinance to disclose on its face something of its purpose and effect as a legislative enactment." (*Id.*, at p. 675; see also *Brosnahan* v. *Eu* (1982) 31 Cal.3d 1, 12 [181 Cal.Rptr. 100, 641 P.2d 200] (conc. and dis. opn. of Mosk, J.).)

■ In the case before us, the referendum petition failed to provide the electors with the information which they needed in order to exercise intelligently their rights under the referendum law.

We find to be without merit the contention of appellants that the purposes of section 4052 were not frustrated by the defects in their petition and that, therefore, the petition was valid.

■ "A paramount concern in determining whether a petition is valid despite an alleged defect is whether the purpose of the technical requirement is frustrated by the defective form of the petition." (*Assembly* v. *Deukmejian* (1982) 30 Cal.3d 638, 652 [180 Cal.Rptr. 297, 639 P.2d 939].) ■ Here, the petition utterly failed to apprise prospective signers of the substantive provisions of ordinance number 84-751. It follows that the purpose of Elections Code section 4052 was in fact frustrated by the defective form of the petition. The declarations submitted in support of, and in opposition to, the petition for writ of mandate support this conclusion. Despite the proponents' claims that they orally advised prospective signers of the ordinance provisions, at least one person sought removal of her name from the petition, alleging she had been misinformed as to its purpose.

■ There remains a question whether respondent is estopped from denying the validity of the petition by reason of the letter she gave to Robinson. In *Board of Supervisors* v. *Superior Court* (1983) 147 Cal.App.3d 206 [195 Cal.Rptr. 67], the court stated, at page 215: "No estoppel case we have found has even hinted that the doctrine could be used to override legislative requirements for referendum petitions where signature gatherers have received erroneous advice about the law." The court went on to distinguish *Assembly* v. *Deukmejian, supra,* 30 Cal.3d 638, where the Supreme Court permitted a referendum to take place despite the fact that petitions supporting the referendum asked signers to give their voter registration addresses rather than their residence addresses, basing its decision upon "evidence that the same mistake had infected numerous important statewide initiative measures presented to the voters from 1978 through 1980," and expressly limiting its holding to the "unusual and unique circumstances" of that case. (*Board of Supervisors* v. *Superior Court, supra,* 147 Cal.App.3d at p. 215.) The court in *Board of Supervisors* found no such unusual and unique circumstances, and none are present here. Respondent's uncontradicted declaration established that she orally advised Robinson of her lack of expertise; moreover, she provided Robinson with copies of the applicable Elections Code sections, including section 4052. Our role is to insure the correct application of section 4052 and to "prevent an unwarranted extension of the estoppel doctrine to a case where the party asserting the theory had no basis for relying upon the advice given by the public agency." (*Id.,* at p. 216.) Estoppel will not be applied against the government if the result would be to nullify a strong rule of public policy or to contravene directly any constitutional or statutory limitations. (*People* ex rel. *Franchise Tax*

*Bd.* v. *Superior Court* (1985) 164 Cal.App.3d 526, 551 [210 Cal.Rptr. 695].)

DECISION

The judgment is affirmed.

Klein, P. J., and Lui, J., concurred.