[No. G013014. Fourth Dist., Div. Three. June 7, 1994.]

CITY OF IRVINE, Plaintiff and Respondent, v.
IRVINE CITIZENS AGAINST OVERDEVELOPMENT et al., Defendants
and Appellants;
IRVINE COMPANY, Real Party in Interest.

**COUNSEL**

Toledano & Wald and James Toledano for Defendants and Appellants.

Rutan & Tucker, Leonard A. Hampel, Joel Kuperberg and Davina Harden for Plaintiff and Respondent.

Latham & Watkins, Robert K. Break and Kevin E. Solliday for Real Party in Interest.

## OPINION

**RYLAARSDAM, J.\***—The City of Irvine, a charter city, brought this action for declaratory relief challenging the validity of a referendum petition submitted by certain Irvine residents and Irvine Citizens Against Overdevelopment (ICAO). The referendum, if approved, would repeal a zoning amendment applying to property within Irvine's statutory sphere of influence. The trial court entered judgment declaring the proposed referendum invalid.

ICAO contends: (1) Irvine lacked standing to maintain the action, (2) the trial court erroneously relied on *deBottari* v. *City Council* (1985) 171 Cal.App.3d 1204 [217 Cal.Rptr. 790] (hereinafter *deBottari*) which invalidated a similar referendum involving a zoning ordinance in a general law city as distinguished from a charter city, (3) the trial court erroneously relied on *deBottari* because that case involved property sought to be rezoned within the city's boundaries while here the land is outside Irvine's city limits but within its sphere of influence, (4) Irvine has not adopted the state law requirement of consistency between its general plan and zoning laws, and (5) there is no inconsistency between Irvine's present general plan and the zone change proposed by the referendum. We disagree with each of these contentions and affirm. In so ruling, we hold the proposed referendum invalid because, if adopted, the zoning change would be inconsistent with Irvine's general plan, since Irvine has adopted an ordinance requiring consistency between its general plan and zoning.

The facts are undisputed. Real party in interest, the Irvine Company (Company) owns a 760-acre parcel of undeveloped land known as Northwood 5 which is located in an unincorporated section of Orange County. The land is within Irvine's statutory sphere of influence. Since 1984, Irvine's municipal code has required that zoning ordinances be consistent with the city's general plan.

In 1987, Company began negotiations with Irvine for the right to develop Northwood 5. Company submitted proposed general plan amendment 87-GA-0042 and proposed zone change 87-ZC-0131. At the time, Irvine was studying the interaction between development and preservation of open space. In 1988, Irvine's city council conducted an initiative election to amend the conservation and open space element and the land use element of the city's general plan. The initiative proposed consolidating conservation and open space areas into large contiguous areas, connecting these open

---

\*Judge of the Orange Superior Court sitting under assignment by the Chairperson of the Judicial Council.

space areas by a network of linking open space spines and "assur[ing] the preservation of conservation and open space areas through a phased dedication and compensating development opportunities program, acceptable to the City and the owner of the land involved, which transfers development opportunities from conservation and open space areas and consolidates them in appropriate development areas." The initiative passed.

Irvine thereupon adopted a general plan amendment (GPA 16), and an interim urgency zoning ordinance. GPA 16 amended the general plan's land use and conservation and open space elements to achieve the initiative's objectives. The interim ordinance placed Northwood 5 in the "development reserve" zone category. This meant the land was unsuitable for immediate development. The interim zoning ordinance remained in effect while Irvine's community development department prepared a permanent zoning ordinance consistent with the amended general plan and completed work on the Northwood 5 development applications.

In August 1991, Irvine's city council certified an environmental impact report, approved general plan amendment 87-GA-0042 and began considering the proposed zone change. Development of Northwood 5 was linked to Company's dedication of another 961-acre parcel of land known as the "Sinks." The city council decided to defer further consideration of the zoning change until after a city election in November. In that election, the electorate approved a measure to continue the program instituted by the 1988 initiative.

On November 12, 1991, Irvine's city council adopted zone change 87-ZC-0131 for Northwood 5. ICAO timely submitted a petition seeking to repeal this zoning change. Irvine's city clerk certified the petition's technical sufficiency. This declaratory relief action followed. The trial court issued a detailed statement of decision and judgment determining that the proposed zoning ordinance referendum was invalid. In its statement of decision the trial court concluded, inter alia, the case was controlled by *deBottari*.

I

*Irvine's Standing to Bring the Action*

ICAO contends Irvine lacks standing to maintain this action, claiming it is an action to enforce Government Code section 65860 that can only be filed by a resident or a property owner. ICAO cites no authority for this proposition other than to point out that *deBottari* involved an action by a resident seeking to compel the city council to place a referendum on the

ballot, and section 65860, subdivision (b) grants residents and property owners the right to enforce consistency between a general plan and zoning. Nothing in subdivision (b) suggests the right to sue granted to residents and property owners is exclusively limited to them.

■ It is of course basic that "[e]very action must be prosecuted in the name of the real party in interest . . . ." (Code Civ. Proc., § 367.) Plaintiffs have standing to sue if they or someone they represent have either suffered or are threatened with an injury of sufficient magnitude to reasonably assure the relevant facts and issues will be adequately presented. (*Torres* v. *City of Yorba Linda* (1993) 13 Cal.App.4th 1035, 1041 [17 Cal.Rptr.2d 400]; *California Water & Telephone Co.* v. *County of Los Angeles* (1967) 253 Cal.App.2d 16, 22-23 [61 Cal.Rptr. 618].)

■ This action concerns the validity of Irvine's ordinance mandating consistency between its general plan and zoning ordinances, the scope of Irvine's authority over unannexed land and a determination of whether the proposed zoning change by referendum violates the city's general plan. State law requires Irvine to establish and maintain an internally consistent general plan. (Gov. Code, §§ 65300, 65300.5, 65700, subd. (a); *Garat* v. *City of Riverside* (1991) 2 Cal.App.4th 259, 285-287 [3 Cal.Rptr.2d 504].) Irvine claims its local ordinance mandates consistency between the general plan and its zoning laws and that repeal of zoning change 87-ZC-0131 would create such an inconsistency. Furthermore, if Irvine refuses to repeal the amended zoning ordinance, it will incur the expense of presenting the issue to the electorate at a special election. (Elec. Code, § 10000, subd. (a).) The choice facing the city of finding itself either in violation of its own general plan or conducting an election which, in turn, may constitute such a violation, gives Irvine the requisite standing.

## II

*Application of deBottari to a Charter City*

■ ICAO contends the principles of *deBottari* apply only to general law cities since that case is founded upon a state statute. ICAO argues the statutory requirement for consistency between general plans and zoning does not apply here, since Irvine is a charter city, and, as such, exempt from state zoning laws. The argument ignores the statutory authority granted to charter cities to adopt similar requirements for consistency and that Irvine has adopted such a requirement by ordinance.

*DeBottari* held an inconsistency between a general plan and a zone change which would result from the passage of a referendum justified the refusal of

a city council to submit the measure to the voters. There, the Norco City Council amended that city's general plan and changed the zoning to conform to the plan amendment. Residents submitted a referendum petition seeking to repeal the zone change. The city council refused to act. The residents then sued to compel the city council to repeal the zone change or submit the matter to the voters. The trial court denied relief.

The Court of Appeal affirmed. Citing Government Code section 65860, subdivision (a) which prohibits enactment of a zoning ordinance inconsistent with a city's general plan, the court noted, "Repeal of the zoning ordinance in question would result in the subject property being zoned for the low density residential use while the amended plan calls for a higher residential density. . . ." (*deBotarri, supra,* 171 Cal.App.3d at p. 1212.) Thus, *deBottari* concluded, "It would clearly distort the purpose of [the statute] were we to construe it as affirmatively sanctioning the enactment of an inconsistent zoning ordinance." (*Id.* at p. 1212.) "In sum, we conclude that the referendum, if successful, would enact a clearly invalid zoning ordinance. Judicial deference to the electoral process does not compel judicial apathy towards patently invalid legislative acts. Nor are we persuaded that a zoning ordinance inconsistent with the general plan constitutes little more than a mere technical infirmity. On the contrary, the requirement of consistency is the linchpin of California's land use and development laws; it is the principle which infused the concept of planned growth with the force of law. We are not persuaded that this principle must now be sacrificed on the altar of an invalid referendum." (*Id.* at p. 1213.)

ICAO notes that *deBottari*'s holding is based on Government Code section 65860. ICAO observes, while a general law city is subject to the statewide zoning law, of which section 65860 is a part, a charter city is not so bound. ICAO points to Government Code section 65803, part of the same chapter, which provides, "Except as otherwise provided, this chapter shall not apply to a charter city, except to the extent that the same may be adopted by charter or ordinance of the city."

The latter part of Government Code section 65803 undermines ICAO's argument. Irvine has adopted an ordinance providing, "All actions, approvals and procedures taken with respect to or in accordance with, this zoning ordinance shall be consistent with the City of Irvine General Plan. In the event this zoning ordinance becomes inconsistent with the City of Irvine General Plan by reason of the adoption of a new General Plan or by amendment of the existing General Plan or any of its elements, the zoning ordinance shall be amended within a reasonable time so that it is consistent

with the existing General Plan as amended. . . ." (Irvine Zoning Ord., § V.E-101.4.) This ordinance brings Irvine within the ambit of the statewide scheme requiring consistency between a city's general plan and its zoning ordinances.

ICAO argues the exception to Government Code section 65803 applies only if a charter city adopts the entire chapter containing the statute. ICAO presents neither authority nor rationale for this conclusion. Section 65803 provides the chapter containing it applies "*to the extent* that the same may be adopted by charter or ordinance . . . ." (Italics added.) The italicized portion of the section militates against ICAO's interpretation. Rules of statutory construction require significance be given to every word of a statute if possible. (*Ruoff* v. *Harbor Creek Community Assn.* (1992) 10 Cal.App.4th 1624, 1629 [13 Cal.Rptr.2d 755]; *Monzon* v. *Schaefer Ambulance Service, Inc.* (1990) 224 Cal.App.3d 16, 30 [273 Cal.Rptr. 615].) The Legislature's use of the phrase "to the extent" must mean charter cities may implement portions of state laws regulating zoning without being required to adopt the entire statutory scheme. (See *Garat* v. *City of Riverside, supra,* 2 Cal.App.4th at p. 281, fn. 13.)

This analysis is consistent with *Garat* v. *City of Riverside, supra,* 2 Cal.App.4th 259. There the court was confronted with the converse of the issue at hand, zoning ordinances allegedly inconsistent with the general plan of Riverside, another charter city. Riverside had not adopted a consistency requirement. In holding Riverside was not subject to Government Code section 65803 absent the adoption of a consistency requirement, the court focused on the question of "whether the City has adopted a consistency requirement by way of ordinance." (2 Cal.App.4th at p. 281.) The inquiry was not whether Riverside had adopted the entire statutory scheme, merely whether its ordinances required consistency between the general plan and the zoning ordinances under attack.

III

*The Extraterritorial Effect of the Ordinance*

Next, ICAO argues *deBottari* is inapplicable because zoning laws may only be imposed on property within a city's boundaries. Citing California Constitution, article XI, section 7, ICAO argues a city's constitutional power to make and enforce ordinances and regulations is limited to land within its geographical boundaries. Article XI, section 7 provides, "A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." At the

outset we note that if this provision were interpreted to prohibit the enactment of zoning ordinances within a city's "sphere of influence," it would invalidate the proposed referendum as much as any of the actions taken by Irvine in connection with Northwood 5's zoning. However, the very language of article XI, section 7 clearly constitutes a grant of power rather than a limitation on the power of a county or city to enact ordinances.

California Constitution article XI, section 5 grants certain powers to cities which adopt a charter for their own governance. Under California Constitution article XI, section 2, subdivision (a), "The Legislature shall . . . provide for city powers." In accordance with this constitutional grant, Government Code section 65300 requires a city's general plan to provide, "for the physical development . . . of any land outside its boundaries which in the planning agency's judgment bears relation to its planning." Under Government Code section 65859, "A city may prezone unincorporated territory adjoining the city for the purpose of determining the zoning that will apply to such property in the event of subsequent annexation to the city . . . . Such zoning shall become effective at the same time that the annexation becomes effective." Construing these constitutional and statutory provisions together and giving effect to each, we conclude it was necessary that Irvine include Northwood 5 in its general plan. Considering this legislative mandate for consistency between general plans and zoning reflected in the statewide statutory scheme, application of Irvine's consistency ordinance to the zoning of Northwood 5 is compelling.

"The impact of the legislation . . . which imposed the requirement that subdivisions and zoning ordinances be consistent with the general plan has been widely noted. As this court, in *City of Santa Ana* v. *City of Garden Grove* (1979) 100 Cal.App.3d 521, 532 . . . stated: 'In 1971 the Legislature enacted [Gov. Code, §§ 66473.5, 65860] which transformed the general plan from just an "interesting study" to the basic land use charter governing the direction of future land use in the local jurisdiction. . . . *As a result*, general plans now embody fundamental land use decisions that guide the future growth and development of cities and counties. The adoption or amendment of general plans perforce have a potential for resulting in ultimate physical changes in the environment . . . .' " (*deBottari, supra,* 171 Cal.App.3d at pp. 1210-1211.)

## IV

### *ICAO's Implied Repeal Argument*

ICAO also contends that even if Irvine is subject to a consistency requirement under Irvine Zoning Ordinance section V.E-101.4, the ordinance may itself be repealed by referendum. We are not called upon to

decide that question since the referendum at issue does not purport to repeal Irvine's consistency ordinance. Nevertheless we note the suggestion that such a repeal may be effected by implication is submitted without citation to any supporting authority and is contrary to the law. In *Lesher Communications, Inc.* v. *City of Walnut Creek* (1990) 52 Cal.3d 531 [277 Cal.Rptr. 1, 802 P.2d 317], the Supreme Court rejected the proposition a general plan could be amended by implication noting, "Implied amendments or repeals by implication are disfavored in any case . . . ." (*Id.* at pp. 540-541.) We decline the opportunity to so expand the scope of the referendum process without constitutional or statutory authorization.

To adopt such an interpretation would permit circulation of referendum petitions which fail to disclose the scope of the proposed amendment. "Notice of the purpose of a local initiative should be given in the title and ballot summary. [California Constitution,] [a]rticle II, section 11, reserved the local initiative power, but in so doing specifies that the power is to be exercised 'under procedures that the Legislature shall provide.' The constitutional provision has been implemented in division 5 of the Elections Code, commencing with section 4000. The statutory provisions repeatedly emphasize the importance of notice to the voters of the purpose of an initiative ordinance. The 'Notice of Intent to Circulate Petition' must include a statement of purpose. (Elec. Code, § 4002.) The statement of purpose must be included in the published and posted notices of intent to circulate. (Elec. Code, § 4003.) The city attorney must prepare a ballot title and summary of the proposed measure expressing its purpose. (Elec. Code, § 4002.5.)" (*Lesher Communications, Inc.* v. *City of Walnut Creek, supra,* 52 Cal.3d at p. 542.) Similar requirements apply to referendum petitions. (Elec. Code, §§ 4052, 4057; see also *Nelson* v. *Carlson* (1993) 17 Cal.App.4th 732, 737-740 [21 Cal.Rptr.2d 485].) The concept of repeal by implication urged by ICAO would frustrate this detailed scheme intended to assure voters in a referendum election are fully informed as to the effect of a proposal's passage.

Statutory time limits for referendum petitions further undermine ICAO's argument of repeal by implication. Elections Code sections 4051 and 4056 require that a referendum petition challenging an ordinance be circulated and filed within 30 days of enactment of an ordinance. Irvine's ordinance requiring consistency between its general plan and zoning (Irvine Zoning Ord., § V.E-101.4) was enacted in 1984. The petition at issue here was not certified until 1992. Therefore, the petition, if intended to repeal the consistency ordinance by implication, did not and could not satisfy the time requirements imposed by the Elections Code.

V

*The Proposed Zone Change Is Inconsistent With Irvine's General Plan*

 Finally, ICAO contends the zone change proposed by the referendum petition is not invalid because a return to the prior zone would be consistent with Irvine's amended general plan. The evidence supports the trial court's finding of an inconsistency.

 A zoning ordinance is consistent with the city's general plan where, considering all of its aspects, the ordinance furthers the objectives and policies of the general plan and does not obstruct their attainment. (*Corona-Norco Unified School Dist.* v. *City of Corona* (1993) 17 Cal.App.4th 985, 994 [21 Cal.Rptr.2d 803].) Under Irvine's amended general plan, the city established building intensity and population density standards for Northwood 5. It could include over 23,000 square feet of general commercial uses and between 1,621 and 2,885 residential dwelling units. The zoning change for Northwood 5 enacted on November 12, 1991, complies with the general plan. Northwood 5's prior zoning designation, development reserve, would not allow any development. Clearly, a zoning designation that categorizes property as not suitable for immediate development is not compatible with the building intensity and population density allowed by Irvine's amended general plan. (Gov. Code, § 65860, subd. (a)(ii).)

Alternatively, ICAO contends that even if a "Development Reserve" zoning is inconsistent with Irvine's current general plan, it would not invalidate the referendum since Irvine Code of Ordinance section V.E-101.4 provides that inconsistent zoning may be remedied by amendment "within a reasonable time." The reasonable time exemption applies only where an inconsistency arises "by reason of the adoption of a new General Plan or by amendment of the existing General Plan or any of its elements." (Irvine Mun. Code, § V.E-101.4.) Here, ICAO is proposing to create an inconsistency by changing Northwood 5's zoning designation, not by amending the general plan.

 Furthermore, ICAO's argument is contrary to the law. As noted in *Lesher Communications, Inc.* v. *City of Walnut Creek, supra,* 52 Cal.3d 531, "A zoning ordinance that is inconsistent with the general plan is invalid when passed [citations] and one that was originally consistent but has become inconsistent must be brought into conformity with the general plan. ([Gov. Code,] § 65860.) The Planning and Zoning Law does not contemplate that general plans will be amended to conform to zoning ordinances. The tail does not wag the dog. The general plan is the charter to which the ordinance must conform." (*Id.* at p. 541.) The same rule applies to this case.

The judgment is affirmed. Irvine shall recover its costs on appeal.

Wallin, Acting P. J., and Sonenshine, J., concurred.

Appellants' petition for review by the Supreme Court was denied September 22, 1994. Mosk, J., was of the opinion that the petition should be granted.